UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAVID ELLIS, JR.,

                Plaintiff,

v.

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,

                Defendant.

Case # 16-CV-6317-FPG

DECISION AND ORDER

      David Ellis, Jr. ("Ellis" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied his application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

      Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 14. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

      On August 19, 2013, Ellis protectively applied for SSI with the Social Security Administration ("the SSA"). Tr.[2] 138-43. He alleged that he had been disabled since May 10, 2013 due to pancreatitis. Tr. 155. On December 15, 2014, Ellis and a vocational expert ("VE") testified at a video hearing before Administrative Law Judge Gregory M. Hamel ("the ALJ").

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]     References to "Tr." are to the administrative record in this matter.

Tr. 29-56. On February 13, 2015, the ALJ issued a decision finding that Ellis was not disabled within the meaning of the Act. Tr. 17-25. On March 24, 2016, the Appeals Council denied Ellis's request for review. Tr. 1-5. Thereafter, Ellis commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not,

2

the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Ellis's claim for benefits under the process described above. At step one, the ALJ found that Ellis had not engaged in substantial gainful activity since the application date. Tr. 19. At step two, the ALJ found that Ellis has the following severe impairments: pancreatitis, diabetes, and migraine headaches. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 20.

Next, the ALJ determined that Ellis retained the RFC to perform light work,[3] but he can only occasionally climb, balance, stoop, kneel, crouch, and crawl and cannot climb ladders or similar devices. Tr. 20-23.

At step four, the ALJ relied on the VE's testimony and found that this RFC prevents Ellis from performing his past relevant work. Tr. 23. At step five, the ALJ relied on the VE's testimony to determine that Ellis can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 23-24. Specifically, the VE testified that Ellis could work as a small parts assembler and electronics assembly worker. Tr. 24. Accordingly, the ALJ concluded that Ellis was not "disabled" under the Act. Tr. 24-25.

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

**II.    Analysis**

Ellis argues that remand is required because the ALJ failed to provide the requisite "good reasons" for discounting the opinion of his treating physician Berthollet Bavibidilla, M.D. ("Dr. Bavibidilla").[4]  ECF No. 9-1, at 11-16.  The Court agrees.

The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion."  *De Roman v. Barnhart*, No. 03 Civ. 0075 (RCC) (AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citation omitted); 20 C.F.R. § 416.927.  Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).  While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion."  *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

Even when a treating physician's opinion is not given "controlling" weight, the ALJ must still consider several factors in determining how much weight it should receive.  The ALJ must consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as

---

[4]    Ellis advances other arguments that he believes require reversal of the Commissioner's decision.  ECF No. 19-1, at 16-20.  However, because the Court disposes of this matter based on the ALJ's violation of the treating physician rule, those arguments need not be reached.

a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); 20 C.F.R. § 416.927(c)(1)-(6).

On December 8, 2014, Dr. Bavibidilla completed a physical RFC questionnaire. Tr. 590-94. He noted that Ellis has chronic/recurrent pancreatitis and abdominal pain with recurrent emergency room visits and that his impairments lasted or can be expected to last at least 12 months. Tr. 590. Dr. Bavibidilla opined that Ellis's pain or other symptoms would frequently interfere with the attention and concentration needed to perform simple work tasks and that he was incapable of even "low stress" jobs. Tr. 591. He also opined that Ellis's impairments are likely to produce "good days" and "bad days" and explained that this is because his pancreatitis flares are unpredictable and frequently require hospitalization. Tr. 593.

In his decision the ALJ summarized Dr. Bavibidilla's opinion and concluded that it was entitled to only "very limited weight" for two reasons. Tr. 22. First, the ALJ reasoned that Dr. Bavibidilla's opinion is inconsistent with Ellis's treatment notes "showing good recovery after his hospitalization." *Id.* Second, the ALJ specifically rejected Dr. Bavibidilla's opinion that Ellis is incapable of even low stress work because there was "nothing to suggest that [Ellis] is incapable of even low stress work. There has never been any diagnosis of a mental health impairment, and there is no evidence that [Dr. Bavibidilla] ever treated [Ellis] for mental health symptoms." *Id.* These reasons will be addressed in turn below.

A. **Post-Hospitalization Improvement**

The ALJ discounted Dr. Bavibidilla's opinion in part because he concluded that it was inconsistent with Ellis's treatment notes "showing good recovery after his hospitalization." Tr. 22. The ALJ reasoned that Ellis's "abdominal CT five months after his hospitalization showed a

6

marked improvement, and he was able to tolerate his new diet and gain weight." *Id.* (citing Tr. 456, 507). The report that the ALJ relies on contains complex findings and it is unclear to the Court how the ALJ, who is not a medical professional, was able to determine that these results provided a sufficient basis for discounting Dr. Bavibidilla's opinion. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the [SSA], must be careful not to succumb to the temptation to play doctor."); *Dennis v. Colvin*, 195 F. Supp. 3d 469, 473-74 (W.D.N.Y. 2016) (explaining that an ALJ may not evaluate and interpret raw medical data like treatment notes and diagnostic testing results).

The report indicates that there was "[m]arked interval improvement in peripancreatic infiltrative changes or edema," but also notes that Ellis had four residual pancreatic pseudocysts and that the portal vein was markedly narrowed and likely thrombosed. Tr. 456. The ALJ focused solely on the portion of this report that noted marked improvement and ignored other portions of the report with negative findings. This was improper because "[a]lthough the ALJ is not required to reconcile every ambiguity and inconsistency of medical testimony, he cannot pick and choose evidence that supports a particular conclusion. His failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988) (quotation marks and citations omitted); *Younes v. Colvin*, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) ("'Cherry picking' can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both.").

The ALJ also cites a treatment note from Ashok N. Shah, M.D. ("Dr. Shah") that indicates that Ellis was "doing well overall tolerating diet and gaining weight." Tr. 507. The Court agrees with Ellis that the observation that he could tolerate food and avoid malnourishment

7

does not indicate that he is not disabled or that Dr. Bavibidilla's opinion is unreliable. Moreover, Dr. Shah also noted that Ellis had "multiple small pseudocysts" and that he believed Ellis was suffering from chronic pancreatitis due to his persistent abdominal pain and recent diabetes diagnosis. *Id.* It was improper for the ALJ to ignore these portions of Dr. Shah's assessment. *Smith v. Bowen*, 687 F. Supp. at 904; *Younes v. Colvin*, 2015 WL 1524417, at *8.

Accordingly, the Court finds that Ellis's supposed post-hospitalization "improvement" does not constitute a "good reason" to reject Dr. Bavibidilla's opinion. The ALJ improperly used his lay opinion to interpret complex medical data and cherry picked evidence to support his conclusion that Dr. Bavibidilla's opinion was entitled to little weight.

### B. Stress-Related Limitation

The ALJ also discounted Dr. Bavibidilla's opinion because there was "nothing to suggest that [Ellis] is incapable of even low stress work. There has never been any diagnosis of a mental health impairment, and there is no evidence that [Dr. Bavibidilla] ever treated [Ellis] for mental health symptoms." Tr. 22. The ALJ concluded that Dr. Bavibidilla's finding as to stress "undermines the credibility of the entire report as there is no internal support and it is inconsistent with the sum of the evidence." *Id.* The Court agrees with Ellis that the ALJ's reasoning is nonsensical.

The physical RFC questionnaire that Dr. Bavibidilla completed asked: "To what degree can your patient tolerate work stress?" Tr. 573. Dr. Bavibidilla checked a box indicating that Ellis was incapable of even "low stress" jobs. *Id.* Although the ability to tolerate stress and an individual's mental health can certainly be related, it is also entirely possible that an individual may be unable to tolerate work stress due to his or her physical limitations. As Ellis points out, stress certainly may cause an individual with chronic pancreatitis to experience exacerbated

8

symptoms.  Accordingly, the ALJ's conclusion that Ellis's lack of mental health impairments contradicted Dr. Bavibidilla's opinion does not constitute a "good reason" to reject that opinion.

The ALJ did note that, regardless of his finding that Ellis did not require additional stress-related limitations, the VE identified jobs that Ellis could perform even if he were limited to routine and repetitive tasks.  Tr. 22.  However, the ALJ used Dr. Bavibidilla's opinion as to stress as a reason to discount his entire report and thus the jobs the VE identified do not account for any of the other limitations that Dr. Bavibidilla assessed.

Finally, although the Commissioner provides several reasons why she thinks Dr. Bavibidilla's opinion was unsupported by objective medical evidence and was inconsistent with other evidence in the record, the ALJ's decision did not give any of these reasons for discounting Dr. Bavibidilla's opinion.  The Commissioner may not substitute her own rationale when the ALJ failed to provide one.  *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action.") (quotation marks and citation omitted); *Goble v. Colvin*, No. 15-CV-6302 CJS, 2016 WL 3179901, at *4 (W.D.N.Y. June 8, 2016) ("[W]hile the Commissioner has cited a number of specific instances in which she believes that [the treating physician]'s opinion conflicts with his office notes and other medical records, and while she maintains that [the treating physician] is not a specialist in mental health, those are not reasons that the ALJ gave in his decision for affording little weight to [the treating physician]'s opinion. Accordingly, the Court may not rely on those *post hoc* arguments when considering whether the ALJ complied with the treating physician rule.").

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is DENIED, and this

matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000); 42 U.S.C. § 1383(c)(3). The Clerk of Court is directed to enter judgment and close this case.

    IT IS SO ORDERED.

Dated: June 12, 2017
       Rochester, New York

                                                   HON. FRANK P. GERACI, JR.
                                                   Chief Judge
                                                   United States District Court